**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LATRACE WILLIAMS, ) | |
| ) | CASE NO. 1:14-cv-02183 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Latrace Williams ("Williams") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On April 5, 2011 and April 14, 2011, Williams filed applications for a Period of

Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") alleging a disability onset date of January 1, 2008. (Tr. 11.) Her application was denied both initially and upon reconsideration. Williams timely requested an administrative hearing.

On November 5, 2012 and January 28, 2013, an Administrative Law Judge ("ALJ") held hearings during which Williams, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 22-99.) On May 22, 2013, the ALJ found Williams was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 20-21.) The ALJ's decision became final when the Appeals Council denied further review. The ALJ also found that the April 13, 2010 denial of Williams' previous application for benefits constituted *res judicata* and barred her claims preceding that date. (Tr. 11-12.) Because Williams was only insured through March 31, 2009, the ALJ dismissed Williams's claims for POD and DIB. (Tr. 14.) Williams does not challenge the propriety of that decision. (ECF No. 16.) As such, the case at bar concerns only Williams's application for SSI.

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-seven (37) at the time of her administrative hearing, Williams is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 20.) Williams has a limited education and past relevant work as a food preparer. (Tr. 19-20.)

*Relevant Hearing Testimony*

The ALJ posed the following hypothetical question to the VE:

That is an individual similar to the claimant in age, education, and work history, who can perform sedentary work, meaning this individual can lift and carry twenty pounds occasionally, and ten pounds frequently, however, would be

>limited to standing and walking two hours in an eight-hour day. I actually, sir, would not characterize that as sedentary work. I would characterize that as light work because of the exertion, but limiting her to two hours standing and walking. I am reading from the hypothetical that was approved upon appeal by the prior ALJ, and it was characterized as sedentary work, but when you lift and carry twenty pounds occasionally and ten pounds frequently, that's light exertion.
>
>This individual can sit six hours daily, can occasionally climb ramps and stairs with rails. She can occasionally bend, balance, and stoop. This individual cannot kneel or crawl.
>
>This individual can reach in all directions; can handle, finger, and feel; can perform simple, routine tasks with simple short instructions, and simple work-related decisions with few workplace changes. As you review that hypothetical, sir, can you tell me whether or not there is any work that such an individual could perform?

(Tr. 56-57.)

The VE testified that such an individual could perform a number of jobs, giving the following examples: surveillance system monitor, Dictionary of Occupational Titles ("DOT") § 379.367-010 (74, 500 jobs nationally, 2,000 in Ohio); food and beverage order clerk, DOT § 209.567-014 (215,000 jobs nationally, 8,700 in Ohio); and, table worker, DOT § 739.687-182 (434,000 jobs nationally, 21,000 in Ohio). (Tr. 57-58.) In response to a specific query from the ALJ, the VE also testified that such an individual could perform the job of an office helper, DOT § 239.567-010 (83,250 jobs nationally, 2,500 in Ohio). (Tr. 58-59.) The ALJ also asked the VE whether the hypothetical individual could perform the job of an order caller, DOT § 209.667-014.[1] (Tr. 59-60.) The VE testified in the affirmative, noting the presence of 38,000 jobs

---

[1] The ALJ repharased the hypothetical as "[a]n individual who can do light exertion ... and limiting standing, walking to two hours a day, with the additional limitation of occasionally climbing ramps, stairs with rails; occasional bending, balancing, and stooping; no kneeling or crawling; can reach in all directions; can handle, finger, and feel; can perform simple routine tasks with simple, short instructions, and simple work-related decisions with few workplace changes ...." (Tr. 60.) Though later referred to as the second hypothetical, it is functionally

3

nationally and 1,400 in Ohio. (Tr. 60.)

The ALJ inquired as to the impact of an additional limitation on the above hypothetical an inability to maintain concentration, persistence, and pace for fifteen percent of the day. (Tr. 60-61.) The VE testified there would be no jobs for such an individual. (Tr. 61.)

Williams' counsel asked the VE "[i]f you go back to the first hypothetical, and you add an additional limitation that the individual would be limited to occasional handling and fingering of the dominant right hand, would that have any affect on your answers?" (Tr. 61.) The VE testified that the additional limitation would have no impact on the job of a surveillance system monitor, but would eliminate the jobs of table worker and food and beverage clerk jobs (Tr. 61), as well as order caller and office worker. (Tr. 62.) *Id*.

### III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

---

identical to the first.

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Williams established medically determinable, severe impairments, due to open reduction and internal fixation of right knee, status post tendon repair of right wrist, schizoaffective disorder in partial remission, and polysubstance dependence in remission. (Tr. 14.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15.) Williams was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 16, 19.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Williams was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

5

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence

6

in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Weight Ascribed to Medical Opinions*

In her sole assignment of error, Williams contends that the ALJ erred when she "unreasonably rejected all medical opinions of record and relied upon her own unsubstantiated opinion" when assessing limitations. Specifically, Williams asserts the ALJ failed to properly consider the factors set forth in 20 C.F.R. § 416.927 when considering the opinions of Dorothy Bradford, M.D., who performed a physical consultative examination; David House, Ph.D., who performed a psychological consultative examination; and, nurse practitioner Sandra Lavelle, who completed a physician questionnaire (psychological). (ECF No. 16 at 12-16.)

Pursuant to 20 C.F.R. § 416.927(e)(2)(i), "[ALJs] are ***not*** bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." Nonetheless, because said consultants are "highly qualified physicians, psychologists, and other medical specialists" ALJs must "consider" their findings. *Id*. When considering these opinions, ALJs should look to factors such as the nature of the relationship (*i.e*

7

examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. § 416.927(e). Moreover, the regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(e)(2)(ii). In other words, although, "[ALJs] and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3, *5, 1996 WL 374180, *2 (Jul. 2, 1996); *see also Puckett v. Colvin*, 2014 U.S. Dist. LEXIS 55079, 2014 WL 1584166 at * 9 (N.D. Ohio April 21, 2014) (explaining that, although the ALJ was not required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC" ).

Nonetheless, this *explanation* requirement should not be confused with the standard required for the weight ascribed to treating sources. The Sixth Circuit has held that the regulation requiring an ALJ to provide "good reasons" for the weight given a treating physician's opinion does *not* apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006). The "good reasons" rule applies only to treating sources. *See, e.g., Chandler v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 90128 at **21-22 (S.D. Ohio, July 1, 2014) ("the ALJ is not

required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source").

On November 27, 2012, Dorothy Bradford, M.D., performed a consultative examination. (Tr. 511-14.) Based on manual muscle testing, Dr. Bradford assessed a "5" or "normal" with respect to Williams' motor abilities in her left and right shoulders, elbows, wrists, fingers, hip, knees, feet and great toes, with the lone exception that right wrist flexors were rated a "4" representing good.[2] (Tr. 511.) With one exception, Williams' ability to grasp, manipulate, pinch, and to perform fine coordination was normal in both her left and right hands. *Id*. Her ability to grasp with the right, dominant hand was, however, abnormal. *Id*. Dr. Bradford noted that Williams could not open a jar with her right hand. (Tr. 512.) Muscle spasms, muscle atrophy, spasticity, clonus, and primitive reflexes were not present. *Id*. Williams's range of motion in her cervical spine, dorsolumbar spine, shoulders, elbows, wrists, fingers, hips, and ankles were all rated as normal. (Tr. 512-14.) Her range of motion in her right knee on active flexion was 120, and 130 on passive flexion. (Tr. 514.) Her range of motion in her left knee on active flexion was 110 and 115 on passive flexion.[3] *Id*. Dr. Bradford remarked that Williams had "[r]educed grasp (R) hand 4/5 due to old tendon laceration." *Id*.

On the same date, Dr. Bradford completed a Medical Source Statement wherein she opined that Williams could lift/carry up to 20 lbs. continuously (over 2/3 of an 8-hour workday). (Tr. 515.) She further stated that Williams could sit, stand, and walk for 8 hours each in an 8-hour workday and did not require a cane to ambulate. (Tr. 516.) She could sit and stand for 20

---

[2] "5" represents the highest score possible with zero representing the lowest. (Tr. 511.)

[3] 150 represents a normal score in these areas. (Tr. 514.)

minutes each without interruption and walk for 10 minutes without interruption. *Id*. Dr. Bradford found Williams had no limitations in the use of her left hand, but could **only occasionally (1/3 of the time) handle or finger with the right hand and could never feel**. (Tr. 517) (emphasis added). Otherwise, she had no limitations reaching with the right hand (including overhead) or pushing/pulling. *Id*. Dr. Bradford did not identify any medical or clinical findings that supported her assessment. *Id*. She further found that Williams could operate foot controls with both feet continuously (over 2/3 of an 8-hour workday). *Id*. As far as postural activities, Dr. Bradford indicated that Williams should never balance, stoop, kneel, crouch, crawl, or climb ladders and scaffolds. (Tr. 518.) She could, however, occasionally climb stairs and ramps. *Id*. With respect to environmental limitations, Dr. Bradford indicated Williams could never be near unprotected heights or moving mechanical parts, and should never operate a motor vehicle. (Tr. 519.) She could be continuously exposed to humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; and, extreme heat. *Id*. However, with respect to the latter two, Dr. Bradford noted "except with the right hand" because Williams "has no sensation on the top of the right hand    unable to feel heat or cold." *Id*. She also noted that Williams had reduced strength in her right hand. (Tr. 520.)

Dr. Bradford concluded that Williams should be limited to sedentary activity only with a break every 20 minutes; that she should not immerse her hand in hot or cold; and, that she could not lift over 10 pounds. (Tr. 525.)

With respect to Dr. Bradford's opinion, the ALJ found as follows:

> Dorothy Bradford, M.D., opined in November 2012 that the claimant was limited to lifting/carrying 20 pounds continuously. She stated that the claimant was able to sit, stand, and walk 8 hours each (Exhibit Bl2F). However, she felt that the

> claimant could walk continuously 10 minutes and stand for 20 minutes (Exhibit Bl 2F). She indicated that the claimant had no sensation on the top of the right hand and was unable to feel heat or cold. She stated at page 16 that the claimant should be limited to sedentary activity with a break every 20 minutes and could not lift over 10 pounds although this contradicted the same report at page 6. Thus, this physician is inconsistent even within the same report. I give this assessment only weight to the extent that it is consistent with the residual functional capacities found by me in this decision.

(Tr. 18-19.)

Williams' brief acknowledges there may be inconsistencies between Dr. Bradford's assessment    that she could sit, stand, and walk for 8 hours each and could lift/carry up to 20 pounds continuously    with her opinion that Williams could only perform sedentary work, lifting no more than 10 pounds. (ECF No. 16 at 13.) Nevertheless, she avers there is no internal inconsistency with respect to Dr. Bradford's opinion that she could only occasionally handle and finger with the right hand, but never feel. *Id*. The RFC finding contains no restrictions with respect to Williams' ability to handle, finger, and feel with the right hand and, therefore, this latter opinion of Dr. Bradford was effectively rejected. (Tr. 16.) Because the ALJ neither acknowledged nor discussed Dr. Bradford's opinion concerning the restrictions of the right hand, Williams asserts she failed to meaningfully explain the weight ascribed in contravention of the regulations. This Court agrees.

The Commissioner asserts that while only citing one inconsistency as an "example," the ALJ "seemingly felt this undermined Dr. Bradford's report as a whole." (ECF No. 18 at 7.) However, there is simply no indication that the ALJ considered Dr. Bradford's statement concerning the restrictions of the right-hand to be internally inconsistent. The Commissioner's argument is entirely speculative. Given the complete absence of any discussion regarding the

11

right-hand restriction, the Court cannot glean any explanation as to why this particular limitation was rejected. Though the Commissioner's brief attempts to identify alleged inconsistencies in Dr. Bradford's report concerning the restrictions of the right-hand (ECF No. 18 at 7), this amounts to an impermissible *post hoc* rationale. Counsel's argument cannot be substituted for the reasons actually offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

    Alternatively, the Commissioner argues that even if the ALJ erred by not adopting Dr. Bradford's handling and fingering limitations of the right-hand, the error was harmless. (ECF No. 18 at 8, *citing NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969), *quoted in Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")). The Commissioner's harmless error argument is based on the VE's testimony that a restriction to occasional handling and fingering with the right, dominant hand, while eliminating most jobs, did not preclude the performance of the job of a surveillance system monitor. (ECF No. 18 at 8.) Furthermore, the Commissioner contends the VE's testimony that

12

74,500 such jobs exist in the national economy and 2,000 exist in Ohio constitutes a "significant number of jobs." *Id*. at n. 8 (citing Tr. 57-58.) Conversely, Williams is of the opinion that the VE's elimination of all but the surveillance system monitor job "demonstrated that there would not be a significant number of jobs which Ms. Williams is capable of performing." (ECF No. 16 at 13.) The Commissioner is correct that this figure has been construed to constitute a significant number of jobs in other decisions.[4]

Nevertheless, the Court is of the opinion that the ALJ should make the initial determination whether the jobs identified by the VE constitute a significant number of jobs. Here, the ALJ's ultimate decision that a significant number of jobs existed which a person with Williams' limitations could perform was based on the inclusion of four additional jobs. The Court declines to conclude, without any basis, that the ALJ would have come to the same conclusion had only the surveillance systems monitor position been identified. In fact, it bears noting that the ALJ herself specifically identified and inquired about two other jobs in addition to the three initially identified by the VE. (Tr. 58-60.)

Moreover, the Court is aware that the Sixth Circuit has called into question whether the surveillance systems monitor job is obsolete.

The VE based his testimony on job descriptions contained in the Dictionary of

---

[4] *See, e.g., Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 579 (6th Cir. 2009) (finding one occupation representing 2,000 jobs sufficient); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 375 (6th Cir. 2006) ("870 jobs can constitute a significant number in the geographic region."); *Harmon v. Apfel*, 168 F.3d 289, 292-93 (6th Cir. 1999) (finding that 700 jobs locally and 700,000 nationally constituted a significant number of jobs); *Kappesser v. Comm'r of Soc. Sec.*, No. 95-5387, 1995 WL 631430, at **4 (6th Cir. Oct. 26, 1995) (finding that 422 jobs locally constituted a significant number of jobs); *Taylor v. Chater*, No. 95-5157, 1995 WL 592031, at **1 (6th Cir. Oct. 5, 1995) (finding that 640 jobs locally constituted a significant number of jobs).

>Occupational Titles ("DOT"), a document published by the Department of Labor that was more than a decade old when the ALJ heard Cunningham's claim. While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. The two relevant descriptions here   document preparer and security camera monitor   strike us as potentially vulnerable for this reason. Without more, however, we cannot adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable.
>
>* * *
>
>And a security camera monitor (referred to as surveillance-system monitor),
>
>>Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.
>
>United States Department of Labor, Dictionary of Occupational Titles (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Service Occupations: 363.681-010 to 389.687-018" hyperlink). In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ   the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001   and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability. *E.g.*, O*NET Resource Center, http://www.onetcenter.org/data Collection.html (last visited Jan. 4, 2010). As such, we remand to the Commissioner for consideration of whether the DOT listings, specifically the document preparer and security camera monitor descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ.

*Cunningham v. Astrue*, 360 Fed. App'x 606, 615-16 (6th Cir. 2010); *accord Coulter v. Colvin*,

No. 1:13-cv-00011-LLK, 2013 WL 3992445, at *2 (W.D. Ky. Aug. 2, 2013) (relying on

*Cunningham* for the proposition that the job of "surveillance systems monitor," also called a "security camera monitor" appears to be obsolete and remanding for a new Step 5 determination).

Finally, it bears noting that while Williams' counsel inquired as to the impact of occasional handling and fingering restriction of the right hand, the impact of *never* feeling with the right hand went unaddressed. (Tr. 56-62.)

Under these circumstances, the Court declines to find that the ALJ's failure to explain the weight ascribed to Dr. Bradford's opinion was harmless error.[5] Accordingly, the Court finds the ALJ was required to explain her basis for rejecting Dr. Bradford's conclusion that Williams was restricted to only occasional handling and fingering and never feeling with the right hand. A remand is necessary to provide the ALJ an opportunity to address this issue.

As the Court is remanding for further proceedings, and in the interests of judicial economy, the Court will not address the other arguments raised in Williams' brief. However, as this matter is being remanded to address Dr. Bradford's opinion, the Court suggests that the ALJ also give a more thorough explanation for the weight accorded to the psychologically based limitations assessed by Dr. House and nurse practitioner Lavelle.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED,

---

[5] This decision should not be misconstrued as an affirmative finding that the job of a surveillance systems monitor is obsolete or even as a finding that reliance on said job is improper. Rather, the Court is simply declining to deem the error here harmless given the controversy surrounding the continued existence of this job.

pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

    IT IS SO ORDERED.

                                      <u>/s/ Greg White</u>
                                      U.S. Magistrate Judge

Date: September 2, 2015